PÉR CuRiAM.
 

 In 1808, Pickering & Waller, merchants in company, purchased goods of Anderson. On the 1st of January, 1809, the purchase money of these goods was secured to Anderson as follows : Pickering gave his notes for one moiety thereof to Anderson, in which the defendant, Joslin, was his security and coobligor. Waller, with General Overton as his security and coobligor, gave his notes for the other moiety to Anderson. Some time after this it was agreed between Pickering and Waller that the latter should withdraw from the business, transfer his interest to Pickering, and take upon himself the sole liability for and payment of the debts. Pursuant to this arrangement, Waller’s notes in which General Overton was surety were canceled, and Pickering gave other notes, with the complainant as security and coobligor, in like sums and dates, for Waller’s moiety, became sole owner, and carried on the business in his own name. In the month of March, 1811, Pickering having neglected his business and not * paid the debts due to Anderson, at the instance of Joslin entered into certain articles of agreement and copartnership with him, under seal, in which is the following clause: “ It is further agreed between the said Joslin and Pickering, that Joslin is to take into his possession all the debts due by note or otherwise to the late firm of John T. Pickering, for collection, together with all the produce taken by said Pickering in discharging the debts, to wit, cotton, hemp, &c., &c., the precise amount of which will be ascertained hereafter; all of which the said Benjamin Joslin hereby
 
 *360
 
 hinds and obliges himself, his heirs, &c., to appropriate to the use of said Pickering, by discharging the debt.originally contracted by Pickering & Waller with John Anderson of Nashville.” The bill charges that Pickering delivered up to the defendant all the goods, lands, accounts, and other property for the uses of the partnership created by the said articles, and in pursuance thereof, and that the defendant sold and disposed of part of the goods and other articles of property, collected the debts, &c., and in consequence thereof the complainant contends that Joslin, the defendant, is bound to payoff, discharge, and satisfy the whole of said debt due from Pickering to Anderson by the notes aforesaid, as well those in which complainant is surety as those in which defendant is surety, upon two grounds : first, by the express stipulation of the articles ; secondly, that, under the foregoing circumstances, Joslin, in a court of equity, will be considered as trustee for the complainant, he having been compelled to pay the notes in which he was security for Pickering out of his own proper funds, by suits in law, &c., and therefore prays an account of the goods, debts, and other property of the firm of Benjamin Joslin
 
 &
 
 Co., &c., &c. The answer of Joslin denies that the partnership of Benjamin Joslin & Co. was formed with any other view than securing the money the defendant was liable to pay as security to * Anderson aforesaid, and that if the articles of the copartnership warrant such a construction, as that the debt due by the complainant to Anderson should be provided for by them, it was not the intention of the parties ; and, answering, denies that, from the goods, bonds, &c., received from Pickering, he has not received money enough to pay off the notes in which he himself was surety, or any of them.
 

 The first question submitted for the opinion of the court is upon the true construction of the articles aforesaid, whether thereby the debts secured to Anderson by the notes of Joslin is only contemplated by them, or whether the debts secured to Anderson by the complainant’s notes, as well as the defendant’s, is included. The articles form a partnership between the defendant and Pickering, and Joslin is to take into his possession debts, produce, &c., which he thereby binds and obliges himself to appropriate to the use of said Pickering, by discharging the debts originally contracted by Pickering & Waller with John Anderson. What debt was originally contracted by Pickering
 
 &
 
 Waller with Anderson? The
 
 *361
 
 debt for the goods, surely, that attached to them by the purchase. In point of fact, and in the nature of the case, there is no other debt. There were not two purchases made by those parties, Pickering & Waller, from Anderson. It was one entire transaction ; it is not pretended otherwise. The debt here referred to must therefore, I think, apply to the purchase of, and mean the price of the goods. I make the expression debt originally contracted by Pickering & Waller, with John Anderson, apply to the transaction of the 1st of January, 1809, of giving notes for the price of the goods, and which constituted the evidence and security of the original debt, and not the evidence and security of a debt then ousted; otherwise than what the giving the notes did, and thus endeavor to restrict it to the moiety for which Joslin was bound, is neither warranted by * the terms of the articles nor the reason of the transaction. It is not warranted by the terms of the articles, for in endeavoring to do so, the notes given the 1st of January, 1809, must be called a debt. If so, what do they say? We, Pickering and Joslin, promise to pay John Anderson. This is their import: Pickering and Joslin are debtors in form to Anderson, creditor. By the terms, then, this is not a debt of Pickering
 
 &
 
 Waller, but of Pickering and Joslin. But suppose this moiety of Joslin’s to be called a debt, and a debt, too, of Pickering & Waller’s, instead of Pickering and Joslin, what is to be done with the word “ originally ? ” It must have some meaning; and every instrument is to be construed so that the whole and every part of it may take effect, if possible, and that no word but what may operate in some shape or other: “
 
 Nam verba debent intelligi cum
 
 effectu,
 
 ut res magis valeat quam pereat.
 
 2 Bl. Com. 383. Giving the word “ originally,” then, a meaning in these articles, it fixes the debt to the purchase of the goods; the debt is measured by the price of them, and not by a part of the price. “ Debts originally contracted” excludes the subsequent regulation of January, 1809, expressly by its import, and negatives in plain language the defendant’s construction, and assumed this last as its correlative from the nature of the whole transaction. Again, supposing the expression “ debt originally contracted by Pickering
 
 &
 
 Waller with John Anderson,” has reference to the notes, and includes in its terms Pickering and Joslin’s notes, what exists to exclude their twin brethren, Pickering and Gordon’s notes, from the same benefit,
 
 *362
 
 that is, from being a debt originally contracted by Pickering
 
 &
 
 Waller with John Anderson also ? They have the same origin, the purchase of the goods ; the same subject matter, the price of the goods; the same extent of liability, each one. half the purchase money ; the same object in view, the security of the creditor, Anderson. Their affinity i
 
 s
 
 still further promoted by having one of the original contracting parties to the purchase, party to all of them, as principal obligor. Secondly, to restrict this expression, originally contracted by Pickering
 
 &
 
 Waller with John Anderson, to the debt of Joslin, is not warranted by the reason of the transaction. Pickering is in declining circumstances, he has wasted the goods, and is continuing to waste them ; he is a great defaulter, having paid no part of the purchase money on the installments, which are all due, and his securities sued on them; conscious of these things, and that his habits forbid him better hope in future, at the application of Joslin he surrenders all up to him, and enters into the articles by which Joslin binds himself “to appropriate to the use of the said Pickering, by discharging the debts originally due from Pickering
 
 &
 
 Waller to John Anderson.” Pickering was bound to pay the whole debt by specialty; he was a party to the notes in which Gordon was coobligor, as well as those in which Joslin was coobligor, and the aggregate constituted the debt originally due by Pickering
 
 &
 
 Waller to John Anderson, to wit, the price of the goods. If the appropriation was to be to his use, for the purpose of discharging him from the debt, what reason for confining the use to a part of it only ; why stop short of the extent of his liability ? The defendant, Joslin, got the whole fund which Pickering had to discharge these notes, and no good reason can be assigned why he, Pickering, should wish Joslin to hold in a different manner from what he himself held. Pickering, as an honest man, ought not to have made any disposition of the property to assist one of these creditors to the prejudice of the other; he was equally liable in conscience to the claims of both; they were .both meritorious as to him, and similarly circumstanced, and therefore no reason for giving a preference. Morality forbade it. And we cannot, therefore, from the reason of the transaction, be induced to think * that the meaning of these articles was to prefer the claim of the defendant to that of the plaintiff; but that the true meaning of them was to constitute a fund for the discharge of both.
 

 See King’s Digest, 10,166.